# MAY, 1929

H. W. Evans v. American Publishing Company et al.

No. 3135. Decided February 6, 1929; May 1, 1929.
(13 S. W., 2d Series, 358; 16 S. W., 2d Series, 516.)

434

*Lawther & Pope,* for appellant.

The uncontroverted evidence of the Plaintiff, H. W. Evans, showed at the time of the accrual of the cause of action, at the time of the filing of the suit, and ever since, and now, said Evans had his domicile and residence in Dallas County, Texas, which, under Subdivision 29, Art. 1995, Vernon's Annotated Civil Statutes, Vol. 5, p. 80, entitled him to bring his suit in said Dallas County. 3 Words and Phrases, p. 2168; Gilman v. Gilman, 52 Me., 165; Semple v.

Commonwealth, (Ky.) 205 S. W., 789; Pannill v. Roanoke Times Co., 252 Fed., 910; In re Seymour, 177 N. Y. Supp., 702; Agassiz v. Trefry, 260 Fed., 226; Mills v. Alexander, 21 Texas, 154; Russell v. Randolph, 11 Texas, 480; Johnson v. Smith, 21 Texas, 726; Lewis v. Ames, 44 Texas, 345; Clements v. Lacy, 51 Texas, 157; Lacy v. Clements, 36 Texas, 665; Ex Parte Blumer, 27 Texas, 734; Benavides v. Gussett, 28 S. W., 113; Sabriego v. White, 30 Texas, 584.

In our Venue Statute, the words "domicile" and "residence" are used interchangeably. A man may have several places of residence. Pearson v. West, 97 Texas, 238; G., C. & S. F. Ry. Co. v. Rogers, 82 S. W., 824; Funk v. Walker, 241 S. W., 720.

*Samuels, Foster, Brown & McGee,* for appellee American Publishing Co.

The language of both statutes made the requirement of venue positively mandatory, so that venue became jurisdictional and not otherwise. The language itself is not susceptible of any other interpretation, and while the Honorable Court of Civil Appeals of the Third District did not expressly certify such question, but on the other hand sought to withdraw it, necessarily and essentially the jurisdictional nature of the question cannot be subtracted or withdrawn, because intrinsically it inheres in the very question itself, and can no more be dissociated from it than breath from the lungs or skin from the human body. Michael v. Michael, 79 S. W., 74; A. H. Belo Corp. v. Granberry, 9 S. W. (2d) 443; Texas Empl. Ins. Ass'n v. Evans, 298 S. W., 516; Gulf, C. & S. F. Ry. Co. v. Lemmons, 206 S. W., 75; Babno v. Compton, 230 S. W., 240; Thompson v. Locke, 66 Texas, 338; Holcomb v. Williams, 194 S. W., 631; Thomson v. Hamm, 210 S. W., 561; Pecos & N. T. Ry. Co. v. Thompson, 106 Texas, 460; Pearson v. West, 97 Texas, 238; Littlefield v. Clayton Bros., 194 S. W., 194; Gulf, C. & S. F. Ry. Co. v. Rogers, 82 S. W., 822.

Evans set up his domestic establishment at Atlanta, and subsequently at Washington, and while his domicile might be construed to be in Dallas, certainly he was not residing there either at the time of filing the suit or when the alleged cause of action accrued. Brisendon v. Chamberlain, 53 Fed., 307.

We respectfully submit that the word "resided," as used in the venue provision of our statutes governing libel, means and can only mean bodily presence and an actual living there, either at the time

of the accrual of the cause of action or at the time when the suit is filed, and moreover, that the requirements of this provision are mandatory and cannot be construed away.

Mr. Presiding Judge SHORT delivered the opinion of the Commission of Appeals, Section B.

The following certified question has been presented to the Supreme Court by the Honorable Court of Civil Appeals for the Fifth District.

H. W. Evans, as plaintiff, filed suit in a district court of Dallas County against American Publishing Company, a private corporation, with its principal place of business in Travis County, and M. M. Crane, a resident of Dallas County. The purpose of the suit was to recover damages against the parties defendant because of alleged slanderous utterances against Evans made in a speech by M. M. Crane, in the city of Austin, Travis County, Texas, on September 2d, 1924, while he was acting as Temporary Chairman of the Democratic State Convention in session in said city, and because of the publication on September 3d, 1924, of the said alleged slanderous utterances by the American Publishing Company in the "Austin American" a daily newspaper owned by the Publishing Company and published in said city.

The American Publishing Company seasonably filed, in due form, a plea of privilege to be sued in Travis County, the County of its domicile, and prayed that the suit as against it be transferred to a district court in said County. H. W. Evans seasonably filed a verified controverting plea which made a prima facie showing of venue in the Dallas County district court. These pleadings made a controverted issue as to whether Evans resided in Dallas County at the time of the utterance and subsequent publication of the alleged defamatory language or at the time of the filing of this suit, August 4th, 1925, within the meaning of the word "resided" as used in Article 5598b, Vernon Sayles' Statutes 1922 Supplement. This statute was enacted by the 36th Legislature at its regular session in 1919, and reads:

"Action for damages for libel or slander shall be brought and can only be maintained, in the county in which the plaintiff in any such action resided at the time of the accrual of the cause of action, or in the county where the plaintiff resided at the time of filing suit, or in the county of the residence of the defendants, or any of them or the domicile of any corporate defendant, at the election of the plaintiff."

H. W. Evans also claimed venue of the suit in Dallas County by reason of the existence of an alleged joint cause of action against both defendants. It has not been deemed necessary to certify the question of law arising on this issue, and no statement will be made with reference thereto. The Publishing Company contended that the above quoted statute is a jurisdictional rather than a venue statute, but the question of law arising on this contention is not certified.

A trial on the plea of privilege was had to a jury, and the issue of where plaintiff resided at the time of the accrual of the cause of action and at the time of the filing of the suit was submitted to the jury, as a disputed issue of fact, on special issues, and a verdict returned favorable to the American Publishing Company. The trial court thereupon entered judgment transferring the case against American Publishing Company to a district court of Travis County. Evans requested peremptory instruction in his favor on this issue on the ground that the evidence bearing thereon was undisputed, and its legal effect was for the court. The submission of this issue was objected to on the same ground, and error on the adverse ruling of the court in each respect is fully assigned on this appeal and presented one of the primary questions for adjudication by this court, and is now before this court on motion for rehearing in this cause.

The evidence on the issue of where Evans resided, during the period of time under inquiry, is undisputed and accepted by both parties as a truthful statement of the facts in reference thereto. In November 1922, the plaintiff, Evans, owned his residence in which he lived in the city of Dallas with his family, consisting of his wife and three children, and was engaged in the practice of his profession as a dentist, and had so lived and practiced such profession in said city for more than twenty years previous thereto. In said month of November he was elected Imperial Wizard of the Ku Klux Klan, the highest executive office of such organization. The headquarters of the organization at this time were in the city of Atlanta, State of Georgia, and shortly after his election, Evans, in company with his wife, went to said city and occupied a small leased apartment, the children being left in their home in the city of Dallas with the mother of Mrs. Evans, who was placed in said home and given charge thereof. When Evans became Imperial Wizard of the Ku Klux Klan, this organization was active in a great many States of the Union, and it was the duty of the Imperial Wizard to visit the various organizations of this order in the different States of the

Union and confer with the officials of subordinate lodges in reference to pending lodge matters. The national headquarters of the Ku Klux Klan were maintained by Evans as Imperial Wizard in the city of Atlanta until the Spring of 1923, when such headquarters were removed to the city of Washington, D. C., where they were maintained at the time of this trial. He and his wife at once went to said latter city, leased a more commodious apartment, and furnished same at his own expense. Evans used his headquarters as a place to transact the business of the order and as a place from which he could "radiate" (his expression) to other sections of the United States where the presence of the Imperial Wizard was believed to be required. The change of headquarters from Atlanta to Washington was made because it was considered by Evans as a more convenient place for the performance of his duties as Imperial Wizard of the organization. While he was in Atlanta, Georgia, the children were either at the Dallas home with the mother-in-law, or the two older ones were attending college in another place. When he went to Washington, the children, when not at school, were with the family at such place, and a few servants were employed. Evans personally stopped at his apartments in either of the cities where headquarters were maintained for very short periods of time, rarely exceeding two weeks in duration. Most of his time was spent away from his headquarters and in travel to different sections of the country in the performance of his duties as Imperial Wizard, but he had his mail sent to the place of his headquarters. Sometimes Mrs. Evans accompanied him on these trips, and sometimes remained at the leased apartment. Each year he made several visits to his home in Dallas, and when in such city would stop at his home with his mother-in-law. Mrs. Evans made more visits to such city than her husband. During the entire time of his absence from his home in the city of Dallas, Evans claimed the city of Dallas as his residence, qualified each year as a voter in said city, and always entertained the intention immediately to occupy his home in Dallas when he should cease holding the office of Imperial Wizard of the Ku Klux Klan. The evidence on this issue is given by Evans at great length and in much detail. It may be fairly epitomized by the statement that it clearly established the fact that, at the time of the accrual of the cause of action and at the time of the filing of the suit, the permanent residence, or domicile, of Evans was in the city and County of Dallas and that he had no other intention than that it should so remain, but that for nearly two years previous to the

accrual of the cause of action he had temporarily resided out of the State of Texas, having first a temporary residence in the city of Atlanta, and later a temporary residence in the city of Washington, always intending to resume his living in Dallas as soon as the exigencies that called for his temporary residing outside of the State should cease. The proof presented, prima facie, a cause of action against the American Publishing Company for libel.

This court concluded that under this undisputed evidence venue of the cause of action alleged against the American Publishing Company was properly laid in Dallas County, reversed the judgment of the lower court, and rendered judgment overruling the plea of privilege. Shortly before this court entered judgment in this case, the Court of Civil Appeals for the Sixth Supreme Judicial District, in the case of A. H. Belo Corporation v. Silas G. Granberry, not yet officially reported [9 S. W., 2d Series, 443], under facts very similar to the facts in the instant case, reached a different conclusion and rendered a different judgment. Because of this conflict in decision, and because the jurisdiction of the Court of Civil Appeals is final on questions of law on the venue of suits, the court deems it advisable to certify the question set out below to the Honorable Supreme Court of Texas for adjudication.

*Question:* Under the foregoing facts, during the period of time under inquiry, did H. W. Evans reside in Dallas County, Texas, within the meaning of the word "resided" as such word is used in our venue statutes, and especially as same is used in Article 5598b Vernon's Sayles' Statutes, 1922 Supplement?

Section 19 of the Bill of Rights provides that "no citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchized, except by the due course of the law of the land." According to the statement in the certificate the appellant, H. W. Evans, is a citizen of this State within the meaning of that phrase in the Bill of Rights. For more than 20 years he has maintained a domicile in Dallas County of this State and during that time has exercised the privilege of voting there and has discharged his obligations by serving on juries there. These are some of the privileges and obligations incident to citizenship. Since the Constitution of Texas guarantees to its citizens redress for wrongs, such as are outlined in the petition in this case committed against him, it is the duty of the State to provide a forum clothed with jurisdiction to administer such redress. Senate Bill Number 114, of the Acts of the Regular Session of the 36th Legislature is

entitled "An act to fix the venue of suits for damages for libel and slander." This act is embodied in one section and is as quoted in the certificate. This language of the Act is inserted in the revision of 1925 as an exception to the general rule stated in Article 1995, which is "no person who is an inhabitant of this State shall be sued out of the county in which he has his domicile, except in the following cases." However, Exception 30 states "whenever, in any law, authorizing or regulating any particular character of action, the venue is expressly prescribed, the suit shall be commenced in the county to which jurisdiction may be so expressly given." Under subdivision 30, Article 1995, the law enacted by the 36th Legislature, quoted in the certificate, is not subject to the rule of construction that an exception to a general rule of law must be strictly construed and that the burden of proof rests upon him, claiming the benefit to the exception, to establish that he comes within the privileges of it. A suit of this character must be brought and can only be maintained in the county in which the plaintiff resides at the time of the accrual of the cause of action or in the county where the defendant resides at the time of filing suit, or in the county of the residence of the defendants, or any of them, or the domicile of any corporate defendant. The plaintiff, under the provisions of this law, has the exclusive privilege to select the forum in which he will bring his suit and try his case, provided only he selects one of the several mentioned in the statute. In this case the plaintiff has elected to bring his suit in the county in which the testimony shows, without conflict, he has his domicile. Since a person may have his domicile in one place and still may have a residence in another, and since, technically speaking, the word "domicile" requires the concurrence of the fact of residence, coupled with the intention of making the place of residence the home of the party (Words and Phrases, Volume 3, Page 2169), and since the lesser is included in the greater it necessarily shows that Evans' domicile being in Dallas County, his residence is there also, unless the word "resided," as used in the law quoted, means a physical, actual being in Dallas County at the time of the accrual of the cause of action.

This word "resided" in the phrase "in which the plaintiff resided at the time of the accrual of the cause of action" must be construed in accordance with the intention of the Legislature *to give to it.* Previous to the enactment by the 36th Legislature of the law quoted in the certificate, a suit for libel or slander could only be maintained, under the general rule as expressed in Article 1995, or under what

is now subdivision Number 9, constituting one of the exceptions to the general rule. Previous to the enactment of this law a suit for libel against a newspaper, such as the appellee, American Publishing Company, was maintainable in any county wherever the paper, containing the libelous matter was sold or distributed. Belo and Co. v. Wren, 63 Texas, 686. It is a matter of history, of which the courts can take judicial knowledge, that at the time this last enactment, quoted in the certificate, was the subject of discussion by the Legislature the daily papers of the State having an extensive circulation were asserting that the previous law operated to their undue disadvantage in permitting plaintiffs to select in any county, where the paper was circulated, a forum in which to bring and try actions for alleged libelous matter published in their columns and distributed throughout most of the counties of the State, thus and thereby often times compelling defendant newspapers to go to distant points from their place of business, where they were best known, where, perchance, the plaintiff, by reason of peculiar circumstances, had an undue advantage. Evidently this statute enacted by the 36th Legislature was the result of a recognition by the Legislature to a certain extent of the justness òf this claim by the newspapers. Nevertheless the Legislature did recognize the right of the plaintiff in a libel or slander suit to have several forums in which he might properly bring his suit. We therefore conclude that the law quoted in the certificate should be liberally construed in favor of the plaintiff in a suit for damages for libel or slander. Venue statutes, such as this one is, are applicable to persons who have their domicile in the State thereby being citizens of the State, since the Legislature of the State would have no authority to take jurisdiction over persons who are not citizens of the State except those who voluntarily subjected themselves to the jurisdiction of the courts of the State. Pennoyer v. Neff, 95 U. S., 714.

While in the case of Brown v. Boulden, 18 Texas, 431, the court, in discussing this question, said, "it not infrequently is a question of considerable nicety and difficulty, to determine in which of two places a man's domicile really is," there is no such difficulty under the facts of this case. Evans' domicile is clearly shown to be in Dallas County. There is nothing in the certificate compelling even the inference that Evans has a "residence" within the meaning of that term anywhere in the State than in Dallas County. As a citizen of Texas Evans is entitled to that construction of the venue statute, given to Article 1995, in controversies between citizens of the State.

In Brown v. Boulden, 18 Texas, 434, it is said, "The word 'domicile' is evidently used in the statute in the sense of residence. But there may be a difference between a man's residence and his domicile. He may have his domicile in one place, and still may have a residence in another; for although a man, for most purposes, can be said to have but one domicile, he may have several residences." In approving this language used in Brown v. Boulden, supra, the Supreme Court, in Pearson v. West, 97 Texas, 238, says, "the Legislature has frequently amended the law, adding new exceptions to those already enacted, but has made no change in the language as it was construed in Brown v. Boulden. In 1876 there was a revision of the laws of this State, and the same language was embraced in the Revised Statute, without any alterations; and in 1895 there was a revision of the laws of this State in which the same language was embraced in Article 1194. In the twenty-seven exceptions to the general rule there are 10 which depend upon the residence or domicile of a party, and of these there are 4 in which the word 'domicile' is used and 6 in which the word 'residence' is used to designate the place of venue, showing that the words domicile and residence have been used by the Legislature interchangeably. We think that these facts show conclusively how the Legislature used the word 'domicile' in view of the construction which the court had placed upon it, and that its use was in the sense of residence." 97 Texas, 238. And we may add that since this language was used the Legislature, in enacting the law under discussion, used the word "residence" and the word "domicile" in the same sense, that is, interchangeably, as it had used the word "domicile" and the word "residence" in previous enactments relating to the same subject. The statute under discussion and Article 1995, which article has been the law of the State since 1846, the former declaring in an affirmative way venue privileges in favor of the plaintiff and the latter in favor of the defendant, are of equal dignity, though Article 1995 is subject to more exceptions than is the statute quoted in the certificate. Being of equal dignity and of the same general character the construction placed upon Article 1995 is at least persuasive, if not compelling, in determining the construction which should be placed upon the law quoted in the certificate. Evans, as a defendant, in a suit for debt brought in Dallas County, with an allegation that he resided there, could not successfully plead his privilege to be sued elsewhere, under the facts stated in the certificate, notwithstanding the facts do show that he has a residence in the District of Columbia and might, perchance, properly

be sued there. In Taylor v. Wilson, 99 Texas, 651, the Supreme Court, through Judge Williams, answering a certified question from the First District, among other things says "the statute only requires that the suit be brought in the county of defendant's residence, and this is not violated by suit in the county of either of such residences where there are more than one in the State. But here there is only one residence in the state, and it is a violation of the statutes to sue anywhere but in the county where it is situated, unless the fact of another residence out of the state ought, under the statute, to affect the venue of suits in our courts. The question which thus arises is different from the one involved in the case referred to (meaning Pearson v. West and other cases to which that case referred). Residence of the defendant in the state determines the venue of suits in our courts, while his residence out of the state can not do so." The legal status of Evans in the case, under the facts stated in the certificate, with reference to the question involved, is the same as that occupied by other citizens of the State holding official positions under the State, at the state capitol or under-the United States at the Federal Capitol. These citizens have their respective domiciles in the counties where they are privileged to exercise the right of franchise and are obligated to serve on juries, and yet during the continuance of their respective official terms they actually reside elsewhere and while so residing elsewhere they have two residences. State officials residing in Austin are suable in Travis County and also equally suable in the counties of their respective domiciles. Federal officials are only suable, under Article 1995, in the counties where they have their respective domiciles, for the reason given in Taylor v. Wilson, supra, that "residence of the defendant in the state determines the venue of suits in our courts, while his residence out of the state, can not do so." So under the facts stated in the certificate the residence of Evans, out of the state, can not determine the venue of his suit brought in the District Court of Dallas County. The law of the case must be determined without reference to the fact, clearly shown by the certificate, that Evans has a residence out of the state. Since he has only one residence in the State, which also happens to be that of his domicile, and since the law gives him the right to bring this character of suit in the county where he resided, within the meaning of the law, at the time the suit was brought, as well as the time the action accrued, we are of the opinion that he did reside in Dallas County, Texas, within the meaning of the word "resided" as such word was used in our venue

statutes, and especially as the same is used in the statute under discussion.

The word "resided" and the word "residence," as used in the venue statute, are used interchangeably, just as the word "domicile" and the word "residence" are so used. Exception 3 to Article 1995 is an illustration of this fact, wherein it says "if one or all of several defendants *reside* without the state or if their residence is unknown suit may be brought in the county in which the plaintiff *resides.*" A similar situation is apparent in Exception 13 and incidently in Exceptions 25, 27 and 28.

To give the word "resided," as used in this text, the meaning given to it, as used in Exception 16 to Article 1995, which exception is as follows: "suits for divorce shall be brought in the county in which the plaintiff shall have resided for six months next preceding the bringing of the suit" is to add to the statute, under discussion, words of similar import as used in Exception 16 with reference to the time during which the plaintiff must have resided in the county at the time of the accrual of the cause of action. The courts judicially know that this particular clause, in Exception 16, having reference to the time during which a plaintiff must have resided in the county in which a divorce suit is brought, evidences the public policy of the State on the subject of divorces. The evident purpose of the Legislature in enacting the law governing the venue in divorce suits, was to require the plaintiff to actually reside, during the six months next preceding the bringing of the suit in the county where the suit was brought. This public policy on this subject, by the Legislature of this State, is also evidenced by what is now Article 4631 of the Revised Statutes, affirmatively declaring that "no suit for divorce shall be maintained in the courts of this State unless the petitioner, for such divorce, shall, at the time of exhibiting his or her petition, be an actual bona fide inhabitant of this State for a period of 12 months, and shall have resided in the county where the suit is filed *for six months next preceding the filing of same.*" It is further evidenced by the language of our appellate court in construing this statute, of which the following is an example: "*continual, actual* residence in the county is required, and a constructive residence, while the plaintiff lives in another or is bodily present there, does not meet the requirements of the statute. It was intended by this statute not only to compel an actual good faith inhabitancy of this state, but an actual residence in the county where the suit for divorce is in-

stituted and not a constructive or imaginary residence." Micheal v. Micheal, 34 Texas Civ. App., 630, 79 S. W., 75. To the same effect is language used in Dickinson v. Dickinson, 138 S. W., 205. But Article 4631 is not a venue statute and the rule of construction of the venue statute used by the courts in construing it is not applicable in construing Article 4631. This article determines the jurisdiction of the court, while the article under discussion merely determines the place where the suit can lawfully be maintained. In one case, the failure to meet the requirements of Article 4631 has the effect to dismiss the suit, while under the venue statute, a defendant is merely given the privilege of having the suit tried in another forum than that in which the suit is brought. Gallagher v. Gallagher, 214 S. W., 516; Oliver v. Oliver, 245 S. W., 1035. The public policy of this state, on the subject of divorce, is further evidenced by the enactment of Article 4632 of Revised Statutes, prohibiting the hearing or granting of a divorce before the expiration of 30 days after the petition has been filed and relieving the defendant of the duty of answering under oath, not permitting the petition of the plaintiff to be taken as confessed for want of an answer, and requiring the decree of the court to be rendered upon full and satisfactory evidence, establishing the material facts alleged in the petition. This public policy required a strict construction of the statute on the subject of divorce to the end that the public policy so expressed may be accomplished. The observations which we have made with reference to the public policy of the state on the subject of divorce and the conclusion we have reached, in view of this public policy on this subject, are more or less applicable to the public policy of the State in the handling of its public lands and its school lands, as evidenced by the language in section 3 of the Act of 1901, page 294, chapter 125, relating to the sale and lease of public lands wherein it is provided: "if any purchaser shall fail to reside upon and improve, in good faith, the land purchased by him, as required by law, he shall forfeit said land and all payments made thereon to the State, to the same extent as for non-payment of interest, and such land shall be again upon the market as if no such sale and forfeiture had occurred, and all forfeitures for nonoccupancy shall have the effect of placing the land upon the market without any action whatever on the part of the commissioner of the general land office." Construing this article under a state of facts where the plaintiff purchased four sections of school land under a statute requiring three years' residence thereon, but during the time left

the land for eight months during which she attended school, only returning to the land on one occasion for a period of one or two days, she therefore forfeited the land so purchased, though on her final return from school she again took up her residence on the home section, the Supreme Court says in Andrus v. Davis, 99 Texas, 303, "this we take to mean that the character of settlement and occupancy required of a purchaser in the first place, viz., an actual residence or occupancy rather than a virtual or constructive one, must be continuous for the prescribed term of three years. *The decisions defining residence, within the meaning of the venue statutes,* and those defining abandonment, when homestead rights are called in question, can have little or no bearing whatever upon the issue to be determined here. * * * While it cannot be denied that one may actually reside upon the land and yet be occasionally temporarily absent therefrom, yet taking into consideration the length of the absence, its purpose, and the necessary residence at a place other than on the lands in controversy, it can not be held that appellant was *actually* residing during this time upon the lands purchased from the State. If an absence at school for eight months may be allowed, we see no reason why a similar absence for three years, should not also be allowed. In this latter case, then, we would have the anomaly of an actual settler making proof of three years' actual occupancy of his land, when in truth he had been absent therefrom and actually residing in another place during the whole time. This we think would be entirely to defeat *the policy of the law, which clearly contemplates the actual occupancy of public lands sold to settlers thereon.*"

Upon the other hand the public policy of this State, as expressed in the Bill of Rights, and in the Venue Statutes, is to give to each of its citizens at least one forum in which he may have redress for his wrongs. The statute under discussion gives such a citizen several forums at his election. In bringing the suit of the nature expressed in the certificate, in the county where he has had his domicile for more than 20 years, notwithstanding he may have been a non-resident of the state most, if not all of the time, during the past six years, with no intention of abandoning his home established in Dallas County, under the statute quoted in the certificate, the plaintiff is clearly within his legal rights. It will be noted that the question asked applies only to the corporate defendant and does not include the individual defendant. In Pittsburg Water Heater Co. v. Sullivan, 115 Texas, 417, in answering

a certified question this section of the Commission of Appeals, speaking through Judge Powell, said, "All the courts hold that, generally speaking, a corporation is a person within the meaning of the law. Of course the rights of such persons are generally fixed by statute." Reference is made in the opinion in that case to that of Southern Railroad Co. v. Mayes, an opinion rendered by the U. S. Circuit Court of Appeals, 113 Fed., 85, quoting the following: * * * "for said acts show conclusively that the defendant corporation, ever since it commenced doing business in the State of North Carolina, has had a local abode and habitation in that State for more than three years prior to the institution of this action. The defendant company is within the provision of the 14th amendment of the Constitution of the United States, a person having all the rights that a natural person may have in actions for or against it." In the case of Water Heater Co. v. Sullivan, supra, it was also held that a defendant corporation resides where it keeps its principal office and that under the statute its domicile was in the county where its principal office was situated. Citing Texas & P. Railroad Co. v. Mangum, 68 Texas, 342, besides several other cases from courts outside of the state. The discussion in the Water Heater Company v. Sullivan, supra, was of article 1995, subdivision 4 and we have only adverted to this decision for the purpose of emphasizing the fact that a corporation, which is the defendant in a case, is a person within the meaning of the venue law.

We therefore recommend that the question be answered in the affirmative.

The opinion of the Commission of Appeals answering the certified question is adopted and ordered certified.

*C. M. Cureton*, Chief Justice.

ON MOTION FOR REHEARING.

MR. JUDGE SPEER delivered the opinion of the Commission of Appeals, Section B.

Appellees have presented a very vigorous motion for rehearing, stressing especially the point that the questions certified necessarily involve a jurisdictional question as contradistinguished from one of pure venue. They argue that although the certificate disclaims the intention to present the question of jurisdiction, nevertheless the inquiry as to venue requires necessarily a determination of the jurisdictional nature of the statutory requirement as to place of suit.

If this contention be true,—and it appears logical,—then we have necessarily held that the statute of place is not one of jurisdiction but of venue. All parties below have treated the matter as one of venue by plea of privilege followed by controverting affidavit in the usual form. The Court of Civil Appeals has certified it as such and we have so treated it in our answer. But it is now contended that there is presented a question of jurisdiction. Out of deference to the earnest insistence of counsel and in view of the fact that in a sense the jurisdiction of the subject-matter is involved in any question of law certified in a given case, we will express briefly our conclusion upon that point.

Assuming that a libel suit under our statute is not an ordinary suit or action within the venue statutes but is a special proceeding, and that the place of suit is jurisdictional in the strictest sense, yet we adhere to our original views that the language of the statute requiring such suit to be brought in the county in which the plaintiff resided at the time of the accrual of the cause of action or at the time of filing suit, uses the word "resided," not in the sense of actual pedal presence, but rather of legal residence as that term has been used throughout the venue statutes. Our reasons for this holding are sufficiently stated in the original opinion by Presiding Judge Short.

But we are not to be understood as assenting to the contention that a libel suit under our statutes is not an ordinary suit or action within the meaning of our venue statutes. There is a well-marked line of distinction between ordinary suits or actions which are controlled by the venue statutes, and those special proceedings authorized by statute which do not come within that class. The latter are illustrated by condemnation proceedings, workmen's compensation claims, divorce cases and the like. These are not ordinary suits or actions and exist in substance and procedure only through the statute. That the statute regulates a cause of action such as libel, death action and the like, is no reason for holding the same to be a special statutory proceeding at all. It is still a suit or action governed by the usual court proceedings, cognizable in the ordinary courts, subject, of course, to all statutory requirements including venue.

Finally, treating the matter as purely jurisdictional, it is not presented in such way as we could possibly determine it as appellees would have us. The certificate informs us:

"These pleadings made a controverted issue as to whether Evans resided in Dallas County at the time of the utterances and subse-

quent publication of the alleged defamatory language or at the time of filing of this suit."

If the plaintiff pleaded this (assumed) jurisdictional fact, then upon the face of the pleadings that court did have jurisdiction of the subject-matter, and in the absence of a plea by the defendants that such allegation was fraudulently made for the purpose of conferring jurisdiction, no issue of *jurisdiction* was raised and, of course, no such question can be decided further than has already been decided in our discussion of venue. See Dwyer v. Bassett, 63 Texas, 274; Roper v. Brady, 80 Texas, 588, 16 S. W., 434; Hoffman v. Cleburne Bldg. & Loan Assn., 85 Texas, 409, 22 S. W., 154; C. R. Garner & Co. v. Riley, (Tex. Civ. App.) 238 S. W., 953. The quotation from the certificate immediately above refers to the issue of *venue* and not *jurisdiction*.

We accordingly recommend that the motion for rehearing be overruled.