**Lorraine McDONALD, Appellant,**

v.

**Wesley SAVOY, d/b/a Wes Savoy Motors, Appellee.**

**No. 15134.**

Court of Civil Appeals of Texas, San Antonio.

May 9, 1973.

Rehearing Denied Nov. 14, 1973.

---

Barry Snell, Jed B. Maebius, Jr., San Antonio, for appellant.

Jones & Dylla, San Antonio, for appellee.

CADENA, Justice.

Plaintiff, Lorraine McDonald, filed this suit to recover from defendant, Wesley Savoy, d/b/a Wes Savoy Motors, statutory penalties because of defendant's failure to comply with state and federal regulations governing credit transactions.

The Texas statutes involved are popularly known as the Texas Consumer Credit Code (Subtitle 2 of Title 79, Tex.Rev.Civ. Stat.Ann.), particularly Chapter 7 (Articles 5069–7.01 through 5069–7.10, Tex.Rev.Civ. Stat.Ann.) which regulates the installment sales of motor vehicles. In this opinion, the applicable state legislation will be identified as the "Texas Code," and all references to the Texas legislation will be to specific articles found in Tex.Rev.Civ. Stat.Ann.

The pertinent federal legislation, popularly known as the Federal Truth-in-Lending Act, is Title I (15 U.S.C., Sections 1601–1665) of the Federal Consumer Protection Act (15 U.S.C., Sections 1601–1681t). The federal legislation will be identified in this opinion as the "Federal Act," and all references to such legislation will be to specific sections of 15 U.S.C.

Pertinent federal regulations are also contained in Regulation Z (12 C.F.R., Sections 226.1–226.12). Regulation Z will be identified in this opinion simply as the "Regulation," and all references to sections of such Regulation will be to corresponding sections of 12 C.F.R.

On October 20, 1971, plaintiff purchased, on credit, a 1968 Mercury automobile from defendant. It is undisputed that, in connection with such credit transaction, defendant required that plaintiff insure such motor vehicle against loss or damage, and that the cost of such insurance was $138.

The contract executed by the parties in connection with the transaction is embodied in a printed form captioned "Motor Vehicle Contract," which purports on its face to have been prepared by Texas Independent Automobile Dealers Association, Inc. The blanks in the form relating to the description of the purchased vehicle, the cash sale price, the amount of the down payment (including the value of the vehicle given by plaintiff as a "trade-in"), the unpaid balance of the cash price, the amount financed, the "finance charge" ($372.50), the interest rate (22.23% per annum), and the method of payment (30 monthly installments of $52.26 each, beginning on November 20, 1971) are all properly filled in.

The printed portion of the contract relating to insurance is as follows:

"The insurance indicated below against loss of or damage to the purchased vehicle is required by Seller, and Buyer may obtain such insurance from the person of his choice, or provide same by assignment of existing coverage. If obtained from or through Seller, the cost of such insurance will be: . . . ."

This language is followed by blanks, each preceded by descriptive words. The blanks, if properly filled in, would disclose the kind, coverage and term of the required insurance, together with the premiums for such insurance if purchased through or from the seller. However, none of these blanks were filled in.

The summary judgment record compels the following conclusions: (1) Defendant made all the necessary arrangements for the purchase by plaintiff of the insurance which defendant required plaintiff to obtain. Plaintiff had no dealings with any representative of the insurer, but merely signed documents procured from the insurance company by defendant. (2) The contract does not disclose that plaintiff was under any obligation to insure the purchased vehicle against loss or damage. (3) Necessarily, since the contract did not dis-

close that insurance was required, it did not disclose the kind, coverage, term or cost of the required insurance.

### 1. *The Claim Under the Texas Code*

The Texas Code expressly authorizes the seller of a motor vehicle on credit to require that the purchaser insure the vehicle against loss or damage and to include the cost of such insurance as a separate charge in the retail installment contract. Article 5069–7.06(2). As we read the Code, the seller has the following options concerning insurance against loss of or damage to the sold vehicle: (1) He may choose not to require such insurance; or (2) he may choose to require such insurance and include the cost of such insurance as a separate charge in the contract; or (3) he may require such insurance but choose not to include the cost as a separate charge. Here, defendant chose to follow the third alternative.

However, the Texas Code expressly provides that when " . . . insurance is required in connection with . . ." the retail installment contract, " . . . the seller . . . shall furnish the borrower a statement which shall clearly and conspicuously state that insurance is requested or required in connection with the contract. . . ." Article 5069–7.06(3). In addition, it is required that the contract " . . . must state the kind, coverage, term and amount of premium for such insurance." Article 5069–7.06(5).

Defendant, while admitting that the disclosures enumerated in the Texas Code were not made in this case, insists that, since the insurance was not procured or purchased from or through him, he was under no duty to make such disclosures.

■ We find nothing in the Texas Code limiting the duty to make the enumerated disclosures to instances where the insurance is purchased from or through the seller. But, conceding, without deciding,

that it would be unreasonable to require a disclosure of the cost of the insurance when it is not procured from or through the seller, the facts in this case establish that plaintiff, in fact, procured the insurance "through" defendant.

■ In any event, we cannot escape the conclusion that, even in a case where the insurance is not procured, from or through the seller, he is under an obligation to embody in the contract a disclosure that insurance is required and a disclosure of the kind, coverage and term of the insurance required. While it may reasonably be argued that the seller is in no position to disclose the amount of premium where he has no connection whatever with the procurement of the insurance, he should experience no difficulty in determining the kind, type and coverage of the insurance which he is requiring. Unless such disclosures are made, the buyer cannot learn, from the contract, the extent of his obligations concerning insurance. It is clear that the Legislature, in adopting the Texas Code, intended that purchasers on credit be informed, in writing, of the obligations which they were assuming in connection with the credit transaction. In addition, the nature of the disclosures required compel the conclusion that the legislative purpose was to insure that the credit purchaser should be furnished with the information necessary to permit him to know or determine the additional cost involved in purchasing on credit rather than paying cash. When a creditor exercises his right to require the purchaser to insure the purchased article against loss or damage, his insistence on such insurance may result in increasing the cost of purchasing on credit, and the determination of the resulting additional cost cannot be determined without knowing the kind, coverage and term of the insurance required.

Defendant's contention that his failure to make the required disclosures resulted from bona fide error will be discussed later.

## 2. The Claim Under Federal Law

■ Section 1633 of the Federal Act declares that the Federal Reserve Board shall exempt from compliance with the requirements of such legislation " . . . any class of transactions within any state if it determines that under the laws of that state that class of transactions is subject to requirements substantially similar to those imposed . . ." by the Federal Act. Our attention has been called to no order or other action by the Federal Reserve Board exempting from the requirements of the Federal Act any class of credit transactions within the State of Texas. We know of no determination, official or otherwise, by the Federal Reserve Board that under Texas law any particular type of credit transaction is subject to requirements "substantially similar" to those imposed by the Federal Act. As a practical matter, it would seem that in order to be entitled to exemption, a state would have to adopt the Federal Act in its entirety as well as the more than 60 pages of Regulation Z, since the Federal Act incorporates by reference each of the disclosure requirements embodied in the Regulation. Clontz, Truth-in-Lending Manual 70 (Rev. ed.1970). It must be noted that the determination relating to substantial conformity of the Texas Code to the Federal Act is to be made by the Federal Reserve Board, and not by Texas courts. Defendant's contention that the transaction upon which plaintiff's claim is based is exempt from the provisions of the Federal Act is without merit.

Plaintiff claims that defendant failed to comply with the Federal Act by (1) failing to include the cost of the insurance in the finance charge and (2) failing to make conspicuous disclosure of the security interest retained by defendant and of the default and delinquency charges.

### a. Inclusion of Insurance Premiums In Finance Charge

Section 1638(a)(6) requires that the creditor disclose the finance charge. Section 1605(c) commands that charges or premiums for insurance written in connection with any credit transaction be included in the finance charge " . . . unless a clear and specific statement in writing is furnished by the creditor to the person to whom the credit is extended, setting forth the cost of insurance if obtained from or through the creditor, and stating that the person to whom the credit is extended may choose the person through which the insurance is to be obtained." The Regulation embodies the same requirement but adds that the written statement be "conspicuous" as well as "clear and specific." Section 224.4(a)(6).

■ The insurance premium was not included in the finance charge, nor did defendant furnish plaintiff with the written statement, referred to in the preceding paragraph, which must be furnished in all cases where the premium is not included in the finance charge. We need not, and do not, decide whether the written statement must disclose the the cost of such insurance in cases where the insurance is not obtained from or through the creditor since, as has already been pointed out, in this case the insurance was obtained "through" the creditor.[1] In the absence of the required written statement, defendant's failure to include the insurance premiums in the amount financed was a violation of the Federal Act and the Regulation.

---

1. The Federal Reserve Board's Interpretative Ruling (12 C.F.R., Section 226.403) states that if the required insurance is not "obtainable" from or through the creditor he need not disclose the cost of that insurance unless the premiums are included in the amount financed, in which case the cost would have to be disclosed under Section 226.8(c)(4) or Section 226.8(d)(1), as the case may be. Since we have held that insurance here was obtained "through" the creditor, we need not consider the distinction, if any, between insurance which is not *obtained* through the creditor, and insurance which is not *obtainable* through the creditor.

### b. *Conspicuous Disclosure*

■ In any event, defendant violated the Federal Act and the Regulation by failing to make a proper disclosure of the security interest retained by him.

Section 1631 of the Federal Act prescribes that all required disclosures be made "clearly and conspicuously," while Section 226.6(a) of the Regulation commands that the required disclosures be made " . . . clearly, conspicuously, in meaningful sequence . . . " and [Section 226.8(a)] " . . . shall be made together on either (1) The note or other instrument evidencing the obligation on the same side of the page and above or adjacent to the place for the customer's signature; or (2) One side of a separate statement which identifies the transaction."

Section 1638(a)(10) of the Federal Act requires a description of " . . . any security interest held or to be retained or acquired by the creditor in connection with the extension of credit. . . . "

In this case, the agreement is written on both sides of a single page. The space provided for the customer's signature is on the face of the page, with neither the customer's signature nor a place for such signature appearing on the reverse. According to the Interpretative Ruling of the Federal Reserve Board, when both the face and the reverse side are used, both sides must contain the statement: "NOTICE: See other side for important information," and the signature lines shall be provided " . . . , following the full content of the document." 12 C.F.R., Section 228.801.

Here, the required statement instructing the customer to "See other side" does not appear on both sides of the page. The signature lines appear only on the face of the page; and, therefore, the requirement that the signature lines be provided following the full content of the document has not been met.

■ On the face of the document it is recited: "Seller is reserving a security interest in the above vehicle to secure this and any other debt Buyer may owe Seller or any subsequent Holder." This is the only statement concerning the security interest which appears above or adjacent to plaintiff's signature. There are, of course, various types of security interests which may be retained or acquired by a person who sells on credit. See Section 226.2(z) of the Regulation and Scope Note, Restatement of Security pp. 1–2 (1941). A mere recital that "a security interest" is being retained falls short of satisfying the requirement that the security interest be described.

On the reverse side of the page, under the heading, "Continuation of Terms and Conditions from Front," there are 43 lines, all in the same size and color of type, divided into 9 paragraphs. In the seventh of these paragraphs, designated as "(8)", there appears a description of the security interest.

■ Even if it be assumed that heading on the reverse side, "Continuation of Terms and Conditions from Front," is a substantial compliance with the command that each side bear the "Notice" advising the customer to "See other side for important information," the requirement that, where both sides of the document are used, the signature lines follow its full content, has been violated. At the very least, this lack of compliance precludes consideration of the recitals which appear on the reverse side and are neither above nor adjacent to the customer's signature.

■ Neither the Federal Act nor the Regulation purport to define "conspicuously" in express terms, and we here make no effort to attempt an all-inclusive definition. See Section 1.201(10), Tex.Bus. & Com. Code, V.T.C.A.; Anno: 17 A.L.R.3d 1010, 1078 (1968). We conclude that the provisions concerning the manner in which the required disclosures shall be made when both sides of the document are used establish minimum standards which, if not followed, preclude a finding that the required

disclosures have been made "conspicuously."

No useful purpose would be served by discussing the contention that the disclosure concerning the default and delinquency charges was not made "conspicuously," since plaintiff does not here contend that she is entitled to a separate award of damages for each violation.[2] Nor do we find it necessary to disclose plaintiff's claim that defendant violated the Federal Act by failing to deliver to her a copy of the agreement, since plaintiff concedes that, under the record before us, she failed to negative the existence of a question of fact in connection with this portion of her claim.

### 3. *The Defense of Bona Fide Error*

Defendant pleaded that if he had, in fact, violated any of the applicable state or federal requirements, such violation was the result of an accidental or bona fide error. Defendant here argues that in no event could plaintiff be entitled to summary judgment in this case because there exists a material issue of fact relating to the existence of bona fide error. We disagree.

The Texas Code, after setting forth the extent of a seller's liability, continues, " . . . provided that there shall be no penalty for a violation which results from an accidental or bona fide error." Article 5069–8.01.

This exemption is, in fact, a proviso. It is settled that a proviso is a matter of defense and need not be negatived by a plaintiff seeking the relief granted by the statute, and that the one claiming the protection of the proviso has the burden of establishing that he comes within its terms. Evans v. American Publishing Co., 118 Tex. 433, 13 S.W.2d 358, 16 S.W.2d 516, 16 S.W.2d 984 (1929); Spence v. Fenchler, 107 Tex. 443, 180 S.W. 597 (1915).

It is clear, then, that plaintiff was under no obligation of establishing the nonexistence of a material fact issue relating to the defense of bona fide error. Where a plaintiff moves for summary judgment in a case in which defendant has asserted an affirmative defense, plaintiff is entitled to summary judgment if he establishes that there is no material issue of fact as to any element of his claim unless defendant comes forward with a showing that there is such a disputed fact issue relating to his affirmative defense. Torres v. Western Casualty & Surety Co., 457 S.W.2d 50, 53 (Tex.1970); 4 McDonald, Texas Civil Practice, Judgments, Section 17.26.2, p. 132 (1971 rev.). The mere pleading of the affirmative defense is insufficient to raise a fact issue in connection with such defense. Hidalgo v. Surety Savings & Loan Ass'n, 462 S.W.2d 540 (Tex.1971).

Section 1640(c) of the Federal Act exempts a creditor from liability if he " . . . shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." This clearly imposes on the creditor the burden of establishing the existence of bona fide error. Under the holdings of our Supreme Court in *Torres* and *Hidalgo,* discussed in the preceding paragraph, the mere pleading of the defense of bona fide error by defendant was insufficient to raise an issue of material fact and, therefore, was insufficient to preclude the rendition of summary judgment in favor of plaintiff.

For the violation of the Texas Code, plaintiff is entitled to recover, under Article 5069–8.01, " . . . twice the amount of interest or time price differential . . ." provided for in the contract, as well as reasonable attorney's fees. Plaintiff concedes that, under the record

---

**2.** Since plaintiff does not contend that she is entitled to the statutory penalty for each violation, the question of "multiple damages" is not before us and is not considered.

before us, she was not entitled to summary judgment for attorney's fees, since she presented no "evidence" on that point.

Since the interest charge or price differential provided for in the contract (the "finance charge") is $372.50, plaintiff is, under our holdings, entitled to judgment in the sum of $745 for the violation by defendant of the Texas Code.

Under Section 1640(a)(1) of the Federal Act, a creditor who violates the disclosure requirements is liable to the person entitled to such information in an amount equal to twice the amount of the finance charge, provided that the liability shall not be less than $100 nor more than $1,000. Under the Federal Act, the undisclosed cost of the insurance ($138) is deemed to be a part of, and must be added to, the disclosed finance charge ($372.50). For the purpose of determining defendant's liability under the Federal Act, the finance charge must be considered to be $510.50 ($372.50 plus $138). Bearing in mind that plaintiff does not claim to be entitled to "multiple damages," the undisputed facts in this case establish that plaintiff is entitled to recover $1,000 for defendant's violation of the Federal Act.

The Federal Act also provides for the recovery of reasonable attorney's fees. Section 1640(a)(2). Again, plaintiff concedes that she failed to negative the existence of a material factual dispute relating to the question of attorney's fees.

The portion of the trial court's judgment granting defendant's motion for summary judgment and denying plaintiff's motion for summary judgment is reversed, and judgment is here rendered that plaintiff recover from defendant the sum of $745 for defendant's violation of the Texas Code, and the further sum of $1,000 for defendant's violation of the Federal Act.

The portion of the judgment below denying plaintiff's claim for attorney's fees is reversed. The portion of plaintiff's claim relating to attorney's fees is severed from the remainder of the case and is remanded to the trial court for the purpose of determining the amount which would constitute reasonable attorney's fees under the facts and circumstances of this case.