**Andrew M. HOUSTON, Jr. and Constance M. Houston**

v.

**ATLANTA FEDERAL SAVINGS & LOAN ASSOCIATION.**

Civ. A. No. 74–119.

United States District Court,
N. D. Georgia,
Atlanta Division.

April 16, 1976.

J. Stephen Clifford, G. W. Florence, Jr., Atlanta, Ga., for plaintiffs.

B. L. Johnson, Mitchell, Clarke, Pate & Anderson, Atlanta, Ga., for defendant.

## ORDER

RICHARD C. FREEMAN, District Judge.

■ This is an action brought pursuant to the Truth-in-Lending provisions of the Federal Consumer Credit Protection Act, 15 U.S.C. § 1601, *et seq.* (hereinafter Truth-in-Lending Act) and Regulation Z, 12 C.F.R. § 226.1, *et seq.,* promulgated pursuant thereto. The action was referred to a Bankruptcy Judge, acting as Special Master, who recommended entering judgment for defendant. The action is presently before the court on plaintiffs' objections to this recommendation. Plaintiff argues that the Special Master erred in concluding that defendant did not violate the Truth-in-Lending Act by improper disclosure of (1) the conditions under which a "late charge" for untimely payment of loan proceeds may be imposed; (2) the components of the amount financed; (3) the identity of the property subject to the security interest; and (4) the address of the defendant. These objections will be discussed seriatim.[1]

■ Before proceeding to the merits of this action, some preliminary comments are warranted. In the first instance, it should be noted that this court disagrees with the

1. Plaintiffs argued before the Special Master that defendant also violated the Act by failing to disclose its right of acceleration as a default charge and by failing to properly identify the type of security interest involved in the transaction. The acceleration clause in issue provides for acceleration of the "entire principal then unpaid . . . with all accrued interest. . . ." The type of security is disclosed as a "deed to secure debt." The Special Master ruled in favor of defendant on these issues and plaintiffs have not objected to this ruling. As a result, plaintiffs have apparently abandoned their contentions concerning these violations; and, in any event, in light of recent authority, it is clear that the Special Master's recommendation concerning these issues is correct. *See, e. g., Gresham v. Household Finance Corp.,* Civil Action No. 74–2189 (N.D.Ga. Nov. 13, 1975) (right of acceleration must be disclosed only where the clause includes the right to accelerate unearned interest); *Ramsey v. American Finance System of Atlanta, Inc.,* Civil Action No. 74–2002 (N.D.Ga. June 20, 1975) (failure to disclose method of rebate on acceleration does not violate 12 C.F.R. § 226.8(b)(7)); *Anthony v. Community Loan and Investment Corp.,* Civil Action No. 74–1602 (N.D.Ga. June 13, 1975) (describing a security interest as one of the types defined by 12 C.F.R. § 226.2(z) is sufficient). *See generally, McDaniel v. The Fulton National Bank of Atlanta,* 395 F.Supp. 422 (N.D.Ga.1975) (on reconsideration); *Barrett v. Vernie Jones Ford, Inc.,* 395 F.Supp. 904 (N.D.Ga.1975) (on reconsideration).

Special Master's conclusion on remand that the party opposing the objections filed, if any, to the report of the Special Master need not file a brief or other document indicating opposition to the objections. *See Paer v. Aetna Finance Co.*, Civil Action No. 74–1142 (N.D.Ga. May 14, 1975). Although this court generally rules upon unobjected to recommendations without further action by the parties, Rule 53(e)(2) provides that "[a]pplication to the court for action upon the report and upon objections thereto shall be *by motion* and upon notice as prescribed in Rule 6(d)." (emphasis added). In this district, all "motions" must be accompanied by memoranda of law citing supporting authorities, Local Court Rule 91.1; and failure to file a brief or other document in response to the motion indicates that the motion is unopposed. Local Rule 91.2. Moreover, this court does not approve of the practice of incorporating by reference briefs filed before the Special Master as part of the objections presented to this court. If the parties rely generally upon all briefs and documents previously filed in the action in supporting or objecting to the Special Master's report, that report will effectively be lowered to the level of a mere amicus brief. Finally, although the reports of the Special Masters in this district are generally entitled to great deference and may constitute persuasive authority on a particular legal point, unapproved, or even summarily approved recommendations do not establish the law of this district on that point. If the parties seek to rely on the *reasoning* in a particular recommendation, the applicable portions of the recommendation should be made a part of the record in the instant case. *E. g., Anthony v. Community Loan and Investment Corp.*, Civil Action No. 74–1602 (N.D.Ga. June 13, 1975); *see Wimberly*

*v. American Finance System of Decatur, Inc.*, Civil Action No. 74–1541 (N.D.Ga. June 12, 1975). This court would normally defer ruling on the issues sub judice pending the parties compliance with the above directions; however, on review of the questions presented, the court has determined that the issues presented are sufficiently clear to preclude the need for additional briefs.[2]

■ The action sub judice involves a loan covering plaintiff's residence consisting of a "First Mortgage Real Estate Note" in the amount of $44,900.00 secured by a first mortgage on the property in favor of defendant. The "total of payments" over the thirty year term of the loan is disclosed as $113,025.60, consisting of a finance charge of $69,039.60 and an amount financed disclosed as $43,986.00. Although it is unusual for a Truth-in-Lending action to involve sums of this magnitude, actions concerning security interests on residential property are not at all unusual. Most of these actions, however, involve second mortgages and so-called "home improvement" contracts, which are subject to the rescission provisions of 15 U.S.C. § 1635. *E. g., Sellers v. Wollman*, 510 F.2d 119 (5th Cir. 1975); *Palmer v. Wilson*, 502 F.2d 860 (9th Cir. 1974); *Pedro v. Pacific Plan of California*, 393 F.Supp. 315 (N.D.Cal.1975). Because "the creation or retention of a first lien against a dwelling to finance the acquisition of that dwelling", 15 U.S.C. § 1635(e), is specifically excepted from the rescission provisions of the Act, the issue in the instant case is whether plaintiffs may recover statutory damages and/or attorney's fees on account of the purported violations in issue. On the other hand, first mortgages, with a few exceptions, see note 3 *infra*, are not otherwise excluded from coverage un-

2. In a prior order remanding this action to the Special Master for further consideration, the court stated that defendant's failure to file a brief within ten days after the filing of plaintiffs' objections would be taken to indicate that defendant did not oppose entry of judgment for plaintiffs. Plaintiffs' objections were filed on January 22, 1976. Counsel for defendant contacted this court on March 16, 1976 concerning his intention to file an opposing brief. Some-

what later, counsel stated that this brief would be filed no later than March 27, 1976; but the brief was not filed by this date. While the court has been made aware of the fact that defendant opposes plaintiffs' objections, failure to file a brief may not be lightly excused. In any event, defendant's apparent dilatory tactics militate against the Special Master's findings of "good faith" discussed below.

der the Truth-in-Lending Act; and this court agrees with plaintiffs that deficiencies in a disclosure statement issued in mortgage transactions should generally be treated on an equal footing with any other consumer loan transaction. *Cf. Atchison v. The Citizens & Southern National Bank*, Civil Action No. 16568 (N.D.Ga. Dec. 13, 1972). Thus, although the courts have noted the difficulties attendant upon "effort[s] to bring order from this veritable chaos of technical language [in the Truth-in-Lending Act]," *Jones v. Community Loan & Investment Corp.*, 526 F.2d 642, 648 n. 12 (5th Cir. 1976), it is nevertheless clear in either the normal consumer loan or the mortgage loan context that "Congress did not intend creditors to escape liability where only technical violations were involved." *Pennino v. Morris Kirschman & Co., Inc.*, 526 F.2d 367, 370 (5th Cir. 1976). *Accord Powers v. Sims and Levin Realtors*, 396 F.Supp. 12, 20 (E.D.Va. 1975) (mortgage loan).[3]

The first "technical" violation raised by plaintiffs in their objections to the Special Master's report concerns the following disclosure contained on the Truth-in-Lending disclosure statement provided as part of the loan transaction, *see* Appendix "A": "If the monthly installments are not paid when due, a late charge in the amount of 4% of the total required monthly payment will be charged." Plaintiffs point out that the express terms of the mortgage note conflict with this disclosure, since the note provides that "any installment . . . due hereunder, or under the terms of said Security Deed, not . . . paid when due . . shall be subject to a "late charge" of four percent (4%) of the aggregate installment *when paid more than 15 days after the due date thereof.*" *See* Appendix "B" (emphasis added). Plaintiffs argue that the conflict between the disclosure statement and the note with respect to accrual of liability for the 4% "late charge" is misleading and confusing in violation of Regulation Z, 12 C.F.R. § 226.6(c), which provides in relevant part as follows: "At the creditor's option, additional information or explanations may be supplied with any disclosure required . . . but none shall be stated, utilized, or placed so as to mislead or confuse the customer . . . ." This court agrees.[4]

In considering this issue, the Special Master noted the absence of controlling authority on this point, ruling in effect that any violation with respect to the late charge disclosure was not actionable since violations may not be predicated on the general expression of purpose and intent found in Section 102 of the Act, 15 U.S.C. § 1601. Assuming arguendo that the broad language in this section, in and of itself, may not be used as a predicate for affirmative relief under the Act, the courts nevertheless often cite this section as a predicate for imposing liability for "technical" violations arising from other sections of the Act or of Regulation Z. *E.g., Powers v. Sims and Levin Realtors, supra. See Thomas v. Myers-Dickson Furniture Co.*, 479 F.2d 740 (5th Cir. 1973). The "confusing and misleading" section of Regulation Z is effectively a "catch-all" for all violations not specifically fitting within a particular category. In fact, it may effectively be argued that the Truth-in-Lending regulations

---

**3.** In *Powers*, the court ruled that the creditor's use of the term "Total Finance Charges" rather than the explicit term "Finance Charge", as required by 12 C.F.R. § 226.8(d)(3), constituted a violation of the Act. *Id.* at 20. This ruling has been specifically approved by the United States Court of Appeals for the Fifth Circuit. *Pennino v. Morris Kirschman & Co., Inc., supra* at 370. Although this "technical" violation is also present in the instant case, it does not constitute a basis for relief since § 226.8(d)(3) does not apply to a "loan secured by a first lien or equivalent security interest on a dwelling and made to finance the purchase of that dwelling. . . ."

**4.** Plaintiffs also argue that the disclosure in issue violates 12 C.F.R. § 226.8(b)(4); however, plaintiffs have not cited any cases in support of their contentions. The disclosure statement clearly identifies the fee in question as a "late charge" and states the manner in which this charge is to be calculated (4% of the monthly payment). As a result, the court has determined that the clause in question does not violate the disclosure requirements of § 226.-8(b)(4). *Cf. Ljepava v. M.L.S.C. Properties, Inc.*, 511 F.2d 935 (9th Cir. 1975).

themselves give rise to such "confusing" disclosure statements that all such statements are per se violative of 12 C.F.R. § 226.6(c). Certainly the requirements of the Act have proved confusing to the courts; however, as noted above, difficulties with technical application of the act have not precluded imposition of liability for "confusing" disclosures. *E. g., Pedro v. Pacific Plan of California, supra.* This court has previously ruled that a disclosure statement which informs the consumer that the creditor claims a right he does not actually possess is "confusing and misleading" and constitutes a Truth-in-Lending violation. *E. g., Gilbert v. Southern Discount Co.,* Civil Action No. 74–1417 (N.D.Ga. July 22, 1975) (failure to disclose limitation on an "after acquired property clause"). *Accord, Wimberly v. Aetna Finance Co.,* Civil Action No. 74–1505 (N.D.Ga. March 31, 1975); *Forrester v. Century Finance Co.,* Civil Action No. 74–859 (N.D.Ga. Nov. 29, 1974) (Henderson, J.); *Kenney v. Landis Financial Group, Inc.,* 349 F.Supp. 939 (N.D.Iowa 1972). In the instant case, it makes no difference that the "grace period" afforded the consumer for payment of a loan installment is conferred by contract rather than by law; for it is clear that defendant herein may not collect the 4% late charge upon failure to pay the installment "when due." The disclosure statement, purporting to confer a non-existent right to immediately collect the late charge conflicts with the terms of the note, is thus confusing and misleading, and violates the Act. The court rejects the Special Master's conclusion to the contrary.

■ The next purported violation is predicated on defendant's failure to adequately itemize the components of the amount financed. Although plaintiffs' arguments are not properly stated in the brief oppos-

ing the Special Master's recommendations, *see* text accompanying note 2, *supra,* the court will overlook this potentially fatal defect at this time. On review of plaintiffs' summary judgment brief before the Special Master, it appears that plaintiffs effectively argue that defendant's failure to disclose the disposition of all payments made at closing violates the Act. Plaintiffs state that the "Statement of Loan" provided at closing reflects a total transaction cost of $57,447.00, consisting of a "cash advance" in the amount of $12,547.00 and the $44,900.00 loan which is the subject of the instant proceeding. The total of these sums was placed in a "process account" from which certain identified payments were made at closing. Some of the payments were made from the proceeds of the loan and some from the "cash advance." Plaintiff has not identified any loan proceeds payments not listed on the disclosure statement,[5] and it seems clear that the disposition of proceeds of the "cash advance" need not be disclosed on the Truth-in-Lending disclosure statement. Thus, it appears that plaintiffs effectively contend that defendant's failure to individually list the recipients of payments from the loan proceeds violates the Act. The court does not agree.

In considering this matter, the Special Master found that $43,553.00, listed on the disclosure statement as "proceeds to you or to others for you", was the net dollar amount of the loan made to plaintiffs. As a result, noting that the Truth-in-Lending Act only requires disclosure of "[t]he *amount of credit* of which the obligor will have the actual use, or which is or will be paid to him or for his account or to another person on his behalf," 15 U.S.C. § 1639(a)(1) (emphasis added); *see* 12 C.F.R. § 226.-8(d)(1), the Special Master ruled that a creditor need not disclose disposition of "all other amounts from other sources [the cash

---

**5.** The face value of the mortgage note in issue is $44,900.00. The disclosure statement informs plaintiffs that the "amount financed" consists of $43,553.00 in "proceeds to you or to other for you" plus $433.00 in various charges, which have been separately itemized, or a "total" of $43,986.00. Adding $914.00 disclosed as the amount of the "prepaid finance charge", to

the "total" amount financed yields the sum of $44,900.00, which is the face amount of the loan. Thus, if any "charges" not disclosed were paid at or after closing, the proceeds for payment of those charges must have been derived from the $12,547.00 "cash advance" rather than from the loan itself.

advance]." Special Master's recommendation at p. 22. The Special Master concluded that plaintiffs' arguments to the contrary ignored the "practical realities" of mortgage loan transactions. Although this court, as noted above, does not agree that mortgage loans should be treated any differently from ordinary consumer loans insofar as liability for technical violations of the Act is concerned, plaintiffs have not cited and this court has been unable to locate any authority ruling that the disposition of the amount of credit extended to the consumer must be itemized on the Truth-in-Lending disclosure statement. In fact, there is some dispute concerning whether the amount of credit extended to the consumer must be disclosed at all. *See Paer v. Aetna Finance Co.,* Civil Action No. 74–1142 (N.D.Ga. May 14, 1975). *See also Pedro v. Pacific Plan of California, supra.* Under the Act and Regulation Z, it is clear that all "charges" . . . "included in the amount of credit extended but which are not part of the finance charge" must be "individually itemized." 15 U.S.C. § 1639(a)(2); 12 C.F.R. § 226.8(d)(1). Plaintiffs have not shown that defendant failed to properly disclose any itemized charges. *See* note 5, *supra.* These charges, together with the credit extended to the consumer "or to another person on his behalf" make up the "total amount to be financed." 15 U.S.C. § 1639(a)(3). Assuming arguendo that separate disclosure of the amount of credit extended to the consumer or on his behalf as one of the components of the amount financed is required, *Paer v. Aetna Finance Co., supra,* it is clear that the disclosure in the instant case is fully sufficient.[6] Plaintiffs' arguments to the contrary are without merit.

 The next purported violation consists of failure to adequately identify the property subject to the security interest. *See* 15 U.S.C. § 1639(a)(8). The property is identified on the disclosure statement as "1071 Fielding Way"; however, neither the city nor the state in which "1071 Fielding Way" is located is listed. Of course, this is another "technical" violation of the Act; but the plain language of § 1639(a)(8) requires "a *clear identification* of the property to which the security interest relates." (emphasis added). *Compare Kenney v. Landis Financial Group, Inc., supra* at 945 ("clear identification" does not require "particularization" of consumer goods subject to a security interest). In fact, as noted by the Special Master, defendant does not contest the inadequacy of the disclosure in issue. Instead, the defendant argued and the Special Master concluded that liability for this improper disclosure should be excused under the provisions of 15 U.S.C. § 1640(c), which provide in relevant part as follows:

> A creditor may not be held liable . . for a violation of this subchapter if the creditor shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error *notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.* (emphasis added).

The majority of courts have ruled that this so-called bona fide error defense applies solely to clerical errors rather than errors of law or legal interpretation, *e. g., Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161 (7th Cir. 1974); *Buford v. American Finance Co.,* 333 F.Supp. 1243, 1248 (N.D.Ga. 1971). Moreover, given the fact that every error of law may also, at least in cases of omission, be construed as a clerical error, the courts refuse to recognize this defense where "[t]he omissions and misstatements were part of defendants' usual credit practice and did not occur in spite of procedures designed to avoid unintentional violations of the Act." *Palmer v. Wilson, supra* at 861; *Pedro v. Pacific Plan of California, supra* at 321. In the instant case, the defendant has submitted an affidavit from one of its officials to the effect that employees preparing Truth-in-Lending disclosure statements are instructed to describe

---

**6.** Disclosures made in the precise terms of the Act or the regulations do not form a proper basis for the imposition of liability. *See, e. g.,* *Anthony v. Community Loan and Investment Corp., supra*; cf. 15 U.S.C. § 1640(f).

the property subject to the mortgage by "number and street, city (if in city), and county; or lot and block, subdivision, and county." As a result, the Special Master concluded that the improper disclosure in the instant case was excused by § 1640(c): "The bona fide omission of the city *and state* when the street address is disclosed is an error falling within said defense." Special Master Report at p. 25 (emphasis added). The Special Master likewise concluded that "Plaintiffs have not offered and would be unable to offer any evidence that the omission of a complete description of the property was intentional. . . ." *Id.*

 Review of the Special Master's report reveals certain inconsistencies. First, it appears that the Special Master may have erroneously placed the burden on the plaintiffs of showing an intentional violation of the act, whereas, it is clear under § 1640(c) that the burden is upon the defendant of showing that the violation is "unintentional." As noted above, the courts considering this question generally base their finding on the existence vel non of procedures designed to eliminate the specific error in question. In that regard, if the Special Master's implicit finding to the effect that defendant herein maintained procedures designed to eliminate the error is not clearly erroneous, *see* Rule 53(e)(2), Fed.R.Civ.P., the erroneous legal conclusion concerning the burden of proof would not compel rejection of the recommendation. Unfortunately, this determinative factual finding is clearly erroneous. As noted above, the Special Master concluded that failure to disclose the city *and state* where the property subject to the mortgage is located would constitute a violation of the act. This ruling is not contested by defendant. *See* note 2, *supra.* Although the Special Master then concluded that this violation was excused, on review of the affidavit relied upon, there is no indication that defendant required its loan origination personnel to disclose the state, as well as the street address, city and county where the property was located. The Special Master's finding to the contrary is not supported by the evidence and is clearly erroneous. As a result, defend-

ant's uncontested violation is not excused and the Special Master's recommendation regarding this issue must be rejected.

 The final violation in issue consists of plaintiffs' contention that defendant erred in failing to disclose its address on the disclosure statement. *See Welmaker v. W. T. Grant Co.,* 365 F.Supp. 531, 539–40 (N.D. Ga.1972). In *Welmaker,* Judge Smith ruled that the identification of the seller as "store # 70" violated the Act, concluding that the "seller's place of business [street address] . . . should be fully and clearly set out in the appropriate place." *Id.* at 540. In the instant case, the Special Master distinguished *Welmaker* on the ground that the defendant herein, unlike the defendant in *Welmaker,* is not a national chain having offices and stores in many states. Instead, the Special Master found that defendant conducts business under the name Atlanta Federal Savings and Loan solely in the Atlanta Metropolitan area, through some twenty-one offices, and that plaintiffs could make loan payments at any of these offices or by mail. Given these distinguishing factors, the Special Master concluded that the *Welmaker* case was not controlling; however, the Special Master also concluded that the violation, if any, was an "unintentional error" which should not subject the defendants to liability. *See id.* at 540–44.

While this court does not disagree with the Special Master's conclusions in all respects, the court does not agree that the "unintentional" nature of the violation would preclude the imposition of liability. As noted above, unintentional violations are excused only where the defendant introduces evidence showing that these violations occurred despite procedures adopted to avoid the particular error. Although the weight of authority construing § 1640(c) is not uniform, *compare id. with Buford v. American Finance Co., supra,* virtually every Court of Appeals decision has rejected the *Welmaker* "good faith" defense in favor of limiting the applicability of § 1640(c) to clerical errors. *E. g., Ives v. W. T. Grant Co.,* 522 F.2d 749, 757–58 (2d Cir. 1975); *Haynes v. Logan Furniture Mart, Inc., su-*

*pra; Palmer v. Wilson, supra.* On the other hand, the *Welmaker* rule, to the extent it may be limited to the class action context, has been approved by Congress:

> In determining the amount of award *in any class action,* the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional.

15 U.S.C. § 1640(a) (emphasis added) (added in 1974). Of course, this provision is not applicable in the instant case. Although another amendment added in 1974 and applicable to all cases provides a defense predicated on "good faith", this defense is only applicable to an "act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board, notwithstanding that . . . such rule, regulation, or interpretation is [later] amended . . . or determined . . . to be invalid . . . ." 15 U.S.C. § 1640(f). The leading judicial interpretation of this provision has limited its applicability to situations where a disclosure statement, prepared in accordance with governing rules, regulations, and interpretations, is later determined to be in violation of the Truth-in-Lending Act because the underlying regulations are invalid or no longer in effect. *Ives v. W. T. Grant Co., supra* at 758. Defendant has not introduced any evidence whatsoever showing that it relied on a specific regulation approving omission of its address; therefore defendant is not protected by § 1640(f). On the other hand, in opposition to the Special Master's recommendation, plaintiffs have not cited any authority, other than the *Welmaker* case, requiring the disclosure of the full street address. As a result, in the circumstances of this case, the Special Master's erroneous conclusion concerning the "good faith" defense does not compel rejection of his recommendation.[7]

As noted above, the Special Master concluded that certain circumstances distinguished the instant action from the *Welmaker* decision. Irrespective of the applicability of the *Welmaker* good faith rule in this case, it is clear that the violation in *Welmaker* was predicated on application of the "catch-all" provisions of 12 C.F.R. § 226.6(c), rather than upon any specific statutory or regulatory provision requiring disclosure of the full address of the creditor. It is one thing to impose liability for a "technical" violation of the language of an express statutory or regulatory provision, and it is another matter entirely to rule, in the circumstances presented, that omission of a non-required disclosure, without more, has rendered a disclosure statement so confusing and misleading as to constitute a violation of the Act. In considering the instant purported violation, unlike the violation predicated on the *conflicting* disclosure with respect to collection of the "late charge", and unlike the circumstances in the *Welmaker* case, there is no possibility that plaintiffs herein could be confused or misled concerning the identity of their creditor. Although better practice requires disclosure of the creditor's full address, in the circumstances presented, where the creditor is a mortgage lender located in one area of one state, full disclosure of the name of the creditor is all that is required. Plaintiffs' arguments to the contrary are without merit.

In sum, this court has concluded that the Special Master's report is erroneous, to the extent that it recommended the entry of judgment for defendant. The Special Master erred in concluding that liability should

---

**7.** If indeed the question of the availability of a "good faith" defense is determined to be an issue involving intent, this court doubts that the issue is amenable to summary adjudication. *Cf. id.* at 545. As a result, it appears that a trial on the merits would be required whenever a defendant contends that the violations in is-sue were "unintentional". In any event, as noted above, the burden of proof on this issue is upon defendant; and this court would not be inclined to rule in the present circumstances that defendant has carried this burden or otherwise shown a triable issue of fact on the "good faith" question. *See* note 2, *supra.*

not be imposed for the technical violation predicated on the conflicting disclosure with respect to accrual of late charges, and the Special Master erred in concluding that defendant's failure to clearly identify the property subject to the mortgage should be excused as a bona fide error. Similarly, although the Special Master erred in applying a "good faith" defense to the violations in issue, the Special Master was correct in ruling that the disclosure of the creditor's address and the disclosures required by 15 U.S.C. § 1639(a)(1)–(2) were sufficient under the Act.[8]

If this were a matter of first impression, this court would be inclined to rule for defendant; for the court does not doubt that the violations found in the instant case were unintentional and did not affect the ability of the consumer to make an informed choice of credit alternatives. This court is extremely reluctant to utilize the technical provisions in issue here to provide a "bonus" to "consumers" who, given the amount of the loan in question, were no doubt able to obtain legal counsel and fully apprise themselves of the nature of their obligation and of available alternatives in the credit market. This is not a case of unequal bargaining power normally found in a small, consumer loan transaction. In fact, it appears that the parties engaged in some negotiations concerning the terms of the loan; for, on review of the documents in the record, it appears that the standard prepayment clause penalty was deleted. Nevertheless, the enactment of the Truth-in-Lending Act has ushered in the era of "let the seller beware." *Cf. Thomas v. Myers-Dickson Furniture Co., supra.* The courts have uniformly limited the applicability of available defenses by narrowly construing the "good faith" and "bona fide" error provisions of 15 U.S.C. § 1640; and authority controlling in this jurisdiction requires the imposition of statutory liability for all violations of the Act and regulations, however technical. *Pennino v. Morris Kirschman & Co., Inc.* This court is constrained to adhere to the prevailing trends and controlling authority in this area until directed to do otherwise.

■ Accordingly, for the reasons hereinabove expressed, plaintiffs' motion for summary judgment is hereby GRANTED. Plaintiffs are entitled to recover $1,000.00 as statutory damages as well as reasonable attorney's fees and costs, 15 U.S.C. § 1640(a); however, the award of attorney's fees is inappropriate without some evidence to support the reasonableness thereof. Accordingly, plaintiffs are hereby ORDERED to submit affidavits and other documents, as appropriate, not later than ten (10) days following this date, specifying the amount of attorney's fees sought and setting forth evidence supporting the reasonableness of the requested amount. Defendant is GRANTED seven (7) days from receipt of plaintiffs' documents in which to file a brief or other document in opposition thereto. Entry of final judgment will be deferred pending the parties' compliance with the foregoing.

IT IS SO ORDERED.

Appendices A and B follow.

---

8. Other possible "technical" violations in the instant disclosure statement, *compare* note 5 *with* note 3, *supra; see Palmer v. Wilson, supra,* have not been presented to the Special Master or argued in plaintiffs' brief. As a result, consideration of such possible violations is inappropriate. *See Howard v. Public Finance Corp.,* Civil Action No. 17725 (N.D.Ga. Dec. 13, 1974) (violations not presented to the Special Master may not be presented for the first time in objecting to the Special Master's recommendations).

# APPENDIX A

ATLANTA FEDERAL SAVINGS AND LOAN ASSOCIATION 153~7~

Statement of Disclosures Made Pursuant to the Truth in Lending Act

Loan to: Andrew M. Houston, Jr. _____ Principal Amount: $ 44,900.00

The loan is repayable in ___360___ monthly installments, each in the amount of $ _313.96_ for principal and interest, plus estimated amounts to be deposited in escrow for the payment of property taxes and hazard insurance premiums _____. If paid to maturity, the total of the payments will be $ _113,025.60_____. It is estimated that the first monthly installment will be due on _March 1, 1973_____, and one installment will be due each month thereafter on the same day of the month as the first installment. The FINANCE CHARGE will begin to accrue on the date you sign the promissory note, which is estimated to be _February 1, 1973_.

There are certain charges in connection with this loan which are **not** part of the FINANCE CHARGE. They are:

| | | | |
|---|---|---|---|
| Title examination fee $ | 320.00 | Recording fees | 8.00 |
| Survey | 50.00 | Inspection fee | |
| Credit report | 5.00 | | |
| Appraisal fee | 50.00 | Total $ | 433.00 |

**The Amount Financed consists of:**

Proceeds to you or to others for you $ 43,553.00 (loan less total closing costs)

The above charges (not part of FINANCE CHARGE) 433.00

Total $ 43,986.00

$ _68,125.60_ of the FINANCE CHARGE will be paid over the term of the loan as part of the monthly installments, and part of the FINANCE CHARGE will be prepaid at the closing. This prepaid FINANCE CHARGE is $ _914.00_, consisting of:

Loan origination fee $ 914.00

Other: _____ _____

The **total** FINANCE CHARGE for this loan is $ _69,039.60_.

 PER
The ANNUAL PERCENTAGE RATE is _7.75_ %.

The security for this loan is a deed to secure debt describing real property which is identified as: _1071 Fielding Way_

Other security: _____
This security also covers any other indebtedness owed Atlanta Federal Savings and Loan Association by you, either now existing or hereafter incurred.

If the monthly installments are not paid when due, a late charge in the amount of 4% of the total required monthly payment will be charged.

Prepayment of this loan may be made as follows: Up to 50% of the unpaid balance of the loan or up to 20% of the original amount of the loan, whichever is more, may be prepaid without penalty during each 12-month period from the date of the loan. If during any such 12-month period, more is prepaid than provided above, then a penalty of 6-months' advance interest will be charged on the excess.

Neither life insurance nor disability-income insurance is required in connection with this loan. Fire or homeowner's insurance may be obtained through an agent or company of your choice.

This is to acknowledge receipt of a copy of this Statement of Disclosures on the date written below.

Date _January 25, 1973_ _Andrew M. Houston, Jr._

# APPENDIX B

## Atlanta Federal Savings & Loan Association

### ATLANTA, GEORGIA

### FIRST MORTGAGE REAL ESTATE NOTE

$44,900.00

ATLANTA, GEORGIA JANUARY 25 19 73

For VALUE RECEIVED, the undersigned promises to pay ATLANTA FEDERAL SAVINGS & LOAN ASSOCIATION, or order, negotiable and payable without offset, at the Office of said Association, Atlanta, Georgia, or at any such other place as the holder of this note may designate_____

FORTY FOUR THOUSAND NINE HUNDRED AND NO/100————————————————DOLLARS, in lawful currency of the United States with interest thereon from date at the rate of 7.50% per annum and payable without grace as follows: in monthly installments of $313.96 each, the first of said installments becoming due on FEBRUARY 25 19 73, and one installment maturing on the same day of each successive month thereafter until the entire indebtedness due hereunder has been paid in full, so as to liquidate the entire indebtedness evidenced hereby (principal and interest) on or before JANUARY 25, 2003. Each monthly installment shall be applied, first, to the payment of any interest due hereunder, and the remainder of said installment shall be applied to the payment of the principal due hereunder. The indebtedness represented hereby may be prepaid in advance without penalty.

The makers, endorsers and guarantors or others at any time bound to pay this note hereby waive and renounce for themselves and their families any and all homestead and exemption rights provided for by the Constitution of the United States of America and Laws of Georgia, in all the property they now have or may hereafter acquire as against the payment of this note or any renewal thereof, and also waive presentment, demand, protest and notice of dishonor.

This note is secured by Security Deed of even date herewith made in conformity with the sections of the Code of Georgia covering Security Deeds, to which deed reference is hereby made.

In the event of a default in any of the covenants, agreements and undertakings provided by the Security Deed to be done or performed by the undersigned, then the entire principal then unpaid shall, at the option of the holder hereof, become due at once and may be collected forthwith, with all accrued interest, time being the essence of this contract. Should the holder fail to exercise this right of accelerating the maturity of the debt, or indulgence granted from time to time, such failure shall in no event be considered as a waiver of such right of acceleration or estop the holder from exercising such right. In case this note is collected by law, or through an attorney at law or under the advice thereof, the undersigned agrees to pay all costs of collection, including ten percent of the principal and interests as attorney's fees.

Should any installment of principal, interest, or other required payments due hereunder, or under the terms of said Security Deed, not be paid when due, the same shall be subject to a "late charge" of four percent (4%) of the aggregate installment when paid more than 15 days after the due date thereof.

The undersigned by the execution of this note, shall become a member of Atlanta Federal Savings & Loan Association.

GIVEN under our hand and seal.

_Andrew M. Houston Jr._ (SEAL)
ANDREW M. HOUSTON, JR.

Witness:

_Constance M. Houston_ (SEAL)
CONSTANCE M. HOUSTON

Notary Public, Georgia, State at Large
My Commission Expires Jan. 1, 1977