Angie G. CASILLAS, Appellant,

v.

GOVERNMENT EMPLOYEES CREDIT UNION OF EL PASO, Appellee.

No. 6735.

Court of Civil Appeals of Texas, El Paso.

July 5, 1978.

Rehearing Denied Aug. 2, 1978.

El Paso Legal Assistance Society, Susan
E. Perry, El Paso, for appellant.

Calhoun, Morton, Deason & Preslar, Fred
J. Morton, El Paso, for appellee.

## OPINION

OSBORN, Justice.

The Appellee, Government Employees Credit Union of El Paso (GECU), filed suit against Elias Casillas and wife, Angie Casillas, to recover the unpaid balance on a promissory note, plus interest and attorney's fees, and to foreclose a security interest in certain personal property given to secure the indebtedness. Angie Casillas, who at the time of suit was divorced from Elias Casillas, filed an answer admitting execution of the note but denying all other allegations. She also asserted by way of an affirmative defense and a counterclaim certain alleged violations of the Consumer Credit Protection Act, Title 15, Sec. 1601, et seq., U.S.C.A., popularly known as the Federal Truth-in-Lending Act, and Federal Reserve Regulation Z, 12 C.F.R. 226.1, et seq., and the Texas Consumer Credit Code, Article 5069–2.01, et seq., Tex.Rev.Civ.Stat.Ann. She sought a recoupment and setoff of twice the finance charge in this transaction, plus reasonable attorney's fees for violation of the Federal Acts. She sought similar amounts by way of a counterclaim under the State Act. She also sought indemnity from her ex-husband who was obligated to pay such debt under the terms of their divorce. Mr. Casillas did not answer. GECU answered the counterclaim with special exceptions and contentions that any errors on its part were bona fide and not intentional. Title 15, Sec. 1640(c), U.S.C.A. It also alleged good faith compliance with rules, regulations and interpretations of the Federal Reserve Board. Title 15, Sec. 1640(f), U.S.C.A. Only one witness testified, and much of the proof, including certain exhibits, was received by way of stipulations. The trial Court entered judgment for GECU denying all relief to Mrs. Casillas. We reverse and remand.

The Appellant initially presents three points contending that the record does not contain proof of default and the amount due on the note, and that ordering a fore-

closure on the security interest was improper. Appellee agrees that the record does not support the judgment in this regard and, therefore, we sustain the first three points of error.

The real battle between these parties is presented by the next three points concerning alleged violations of Truth-in-Lending provisions and the defenses raised by GECU. The Consumer Credit Disclosure form used in connection with this loan states that the loan is secured by a Security Agreement covering "Motor Vehicle(s)," "Household Goods & Appliances" and "Other," and following each classification of property are several blank lines. On this form, as completed, there are listed two automobiles and certain household goods, and a line is drawn through the blanks after the word "Other." Beside this part of the disclosure form is the following statement: "Security Interest/The Security Agreement will secure future or other indebtedness and will cover after acquired property."

■ Under Section 9.204(d)(2), Tex.Bus. & Comm.Code Ann. (1968), a security interest does not attach under an after acquired property clause as to consumer goods other than accessions unless acquired within ten days after the secured party gives value. But the printed form used in this loan transaction did not so inform the borrowers. This is a violation of Section 1639(a)(8) of the Consumer Credit Protection Act and Section 226.8(b)(5) of Regulation Z.[1] *Garza v. Allied Finance Company,* 566 S.W.2d 57 (Tex.Civ.App.—Corpus Christi, 1978); *Pollock v. General Finance Corporation,* 535 F.2d 295 (5th Cir. 1976), reaff'd, 552 F.2d 1142 (1977); *Tinsman v. Moline Beneficial Finance Company,* 531 F.2d 815 (7th Cir. 1976); *Willis v. Town Finance Corporation of Atlanta,* 416 F.Supp. 10 (N.D.Ga., 1976); *Johnson v. Associates Finance, Inc.,* 369 F.Supp. 1121 (S.D.Ill., 1974). In the recently decided *Garza* case, Chief Justice Nye said:

"* * * The reference to after-acquired property contained in the disclosure statement ignores this 10-day limitation and it purports to secure for the creditor all of defendants' after-acquired consumer goods.

"Although our Texas courts have not considered this precise question, other courts have consistently ruled that disclosure of an after-acquired property clause without further explanation of the 10-day limitation on personal property subject to the security interest fails to comply with 12 C.F.R. Sec. 226.8(b)(5). * * *

"* * * this portion of the regulation requires a lender to explain the 10-day limitation of U.C.C. 9–204(4)(*d*) [sic] so that the borrower is informed that any consumer goods that he may acquire within ten days of the loan transaction are subject to the security interest and that any consumer goods acquired after that date are not. * * *"

We attach no significance to the fact that a line is drawn through the blanks after the word "Other." This does not mean, as Appellee urges, that there was to be no security interest in any other property, thus eliminating all after acquired property. It only means that there originally was no other property subject to the security interest other than the listed autos and the listed household goods.

■ We also agree with Appellant's assertion that the disclosure form fails to describe the type of security interest taken. Section 226.8(b)(5) of Regulation Z requires a disclosure of the "description or identification of the type of any security interest held or to be retained or acquired * *." The disclosure statement in this transaction only states the loan is secured by a security agreement on the listed property and that the security agreement will cover after acquired property. A mere recital that a security interest is being retained falls

---

1. In this case, where there has never been any claim made as to after acquired property, this issue seems to raise "considerable nitpicking," but "that has been mandated as the order of the day." *Ford Motor Credit Company v. Blocker,* 558 S.W.2d 493 at 499 (Tex.Civ.App.—El Paso 1977, writ ref'd n. r. e.).

short of meeting the requirement that the security interest be described. *McDonald v. Savoy*, 501 S.W.2d 400 (Tex.Civ.App.—San Antonio 1973, no writ). Also see, *Pennino v. Morris Kirschman and Company*, 526 F.2d 367 (5th Cir. 1976).

By way of defense, Appellee relies upon a form "Disclosure Statement of Loan" in a pamphlet prepared by the Board of Governors of the Federal Reserve System. Its defense was made under the provisions of Title 15, Sec. 1640(c) and (f), U.S.C.A., which states:

"(c) A creditor may not be held liable in any action brought under this section for a violation of this subchapter if the creditor shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

"(f) No provision of this section or section 1611 of this title imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board or in conformity with any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the Board to issue such interpretations or approvals under such procedures as the Board may prescribe therefor, notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or approval is amended, rescinded, or determined by judicial or other authority to be invalid for any reason."

■ First, it appears that Section 1640(c) was designated to provide a defense to transactional errors, such as clerical errors, but not to mistakes in judgment about how to comply with the law and applicable regulations. *Ives v. W. T. Grant Company*, 522 F.2d 749 (2nd Cir. 1975); *In re Dickson*, 432 F.Supp. 752 (W.D.N.C., 1977); *Houston v. Atlanta Federal Savings & Loan Association*, 414 F.Supp. 851 (N.D.Ga., 1976); Smyer, "A Review of Significant Legislation and Case Law Concerning Consumer Credit," 6 St. Mary's L.Jr. 37 at 69 (1974).

■ In *Ives v. W. T. Grant Company*, *supra*, the Court concluded that a defense under Subsection (f) is legally insufficient when based upon Board pamphlets or staff letters. Also see, *Pennino v. Morris Kirschman and Company*, *supra*, footnote 8; and Smyer and O'Gorman, "Significant Recent Developments in Federal Consumer Credit Legislation and Case Law," 8 St. Mary's L.Jr. 707 at 722 (1977). The Court, in the *Ives* case, concluded that the reference in Subsection (f) to "any rule, regulation, or interpretation thereof by the Board" means those requirements of Truth-in-Lending that have become a part of Regulation Z. We concur in that holding and thus Appellee may not base its defense upon the 1969 pamphlet. But in any event, the evidence is insufficient to show any reliance upon that pamphlet in this case. The one witness to testify said the Credit Union disclosure form follows the one in the Federal Reserve pamphlet, but not that it was relied upon or served as a basis for drafting the one involved in this credit transaction. We sustain Appellant's Points of Error Nos. 4, 5 and 6.

■ The last point contends that Appellant is entitled to damages, attorney's fees and Court costs under the Texas Consumer Credit Code. The Appellee asserts that it is not licensed under that Code and that it has no application to credit unions. The evidence is without dispute that the Appellee is chartered and operates under the provisions of Article 2461–1.01, et seq., Texas Credit Union Act, and it has no license under Article 5069–3.01, Tex.Rev.Civ.Stat. Ann. Chapter 3 of the Texas Consumer Credit Code appears to apply to regulated loans of those making small loans of $2,500.00 or less, but Chapter 4 applies to installment loans made by "Any bank, savings and loan association or credit union doing business under the laws of this State * * *." Such a definition clearly includes the Appellee. Article 5069–2.01(f) states:

"(f) 'Credit Union' means any person doing business under the authority of and

as permitted by Articles 2461 through 2484, Revised Civil Statutes of Texas, 1925, as amended and the amendments thereto, * * * ."

And, as shown by the footnote in the Statute, "the amendments thereto" include Article 2461-1, et seq., under which the Appellee admittedly was organized and now operates. Thus, Chapter 4 is applicable, and Article 5069-4.03 requires the lender to disclose through a statement in writing certain information concerning the loan which has not been done in this case. The Texas Consumer Credit Code provides in Article 5069-8.01 that any party who fails to perform any duty imposed on him by any provision of this subtitle shall forfeit twice the amount of the interest contracted for and reasonable attorney's fees fixed by the Court, which is the relief Appellant seeks in her counterclaim. We sustain the Appellant's last point of error.

The judgment of the trial Court is reversed and the cause is remanded to that Court for a new trial in accordance with this opinion.

PRESLAR, C. J., not sitting.

## ON MOTION FOR REHEARING

The Appellee has filed a motion for rehearing urging several errors in our original opinion. First, it is again urged that the line drawn through the blanks after "Other" on the disclosure form shows that no after acquired property was to be covered by the security agreement. We believe the blanks were placed on the form to list property covered by the security agreement other than motor vehicles and household goods and appliances. For instance, if Appellee proposed to have the security agreement cover a sailboat owned by a borrower, it would not describe that property under the categories "Motor Vehicles" or "Household Goods and Appliances," but under "Other." If the "Other" category was to list after acquired property, as Appellee asserts, how could that after acquired property be listed under "Other" at the time the disclosure form was completed and before

the after acquired property was obtained? The point of error is overruled.

The Appellee next asserts that we erred in holding that the disclosure form did not adequately describe the type of security interest taken. An illustration of a description of a security interest is found in the excerpts from FRB letter of November 2, 1976, No. 1125, where there is approval of a security interest description as follows:

" * * * This means that if a breach of this contract by the debtor occurs, the creditor may take possession of the collateral and sell it, all at debtor's expense and for debtor's account." See CCH Consumer Credit Guide—Transfer Binder, para. 31,475, p. 66,708.

In this case, Appellee gave no such description of its security interest and it violated Section 226.8(b)(5) of Regulation Z. For reasons stated in the original opinion, the disclosure form was also defective because it did not disclose the ten-day limitation on after acquired property. The second point is overruled.

The third point complains of our rejection of the pamphlet defense and the adoption of the *Ives* case approach, which Appellee asserts has been overruled by subsequent congressional action. We disagree. The pamphlet provision concerning after acquired property was the subject of two staff letters. See FRB letter of August 22, 1974, No. 829, and FRB letter of December 30, 1975, No. 983. CCH Consumer Credit Guide—Transfer Binder, para. 31,151, p. 66,514, and para. 31,323, p. 66,605. The Court, in *Pollock v. General Finance Corporation*, 552 F.2d 1142 (5th Cir. 1977), considered both letters, rejected the staff conclusions, and held that the ten-day limitation on after acquired property must be disclosed. That decision was followed in *Garza v. Allied Finance Company*, 566 S.W.2d 57 (Tex.Civ.App.—Corpus Christi 1978, no writ), where the language in the disclosure form about other indebtedness and after acquired property is identical to the language in the form in this case.

We further conclude that the 1976 amendment, now a part of Title 15, Section

62

1640(f), U.S.C.A., is of no assistance to the Appellee in this case. That amendment provides for a reliance on staff interpretations "under such procedures as the Board *may* prescribe therefor \* \* \*." (Emphasis added). Clearly, this is prospective in nature and only applies to interpretations after the legislative act in February, 1976. It has no retroactive effect to cover a 1969 pamphlet. See *Black v. G. B. Enterprises Inc.,* No. 75–890 (U.S.D.C., D.C., January 6, 1977); 5 CCH Consumer Credit Guide, para. 98,229, p. 87,671. The point is overruled.

The next point complains about our holding that the testimony is insufficient to show a reliance on the FRB pamphlet. Since the defense is not available in this case, the issue of reliance becomes moot and the point is overruled.

The last point urges we erred in holding that Appellant had a valid counterclaim under the Texas Consumer Credit Code. Since the case must be reversed and the evidence may not have been fully developed on this issue, we sustain this point and remand the matter to the trial Court for further consideration when the evidence is fully developed. We believe our original holding that Chapter 4 of the Texas Consumer Credit Code does apply to credit unions, if they make loans under that Code, is correct. In this case, the evidence is clear that GECU was not licensed and did not operate under the Texas Consumer Credit Code. But that is not the controlling issue. The issue is whether this loan was made under the provisions of the Texas Consumer Credit Code. If not, then the trial Court was correct in denying the counterclaim; otherwise, it was in error on this issue. Point of Error No. 5 is sustained and the issue as to the counterclaim under the Texas Consumer Credit Code is remanded to the trial Court for determination after hearing further evidence.

PRESLAR, C. J., not sitting.